J. B. LININGER, PLAINTIFF IN ERROR, v. ISAAC M. RAYMOND ET AL., DEFENDANTS IN ERROR.

1. Assignment for the benefit of creditors. Goods assigned for the benefit of creditors, and in the hands of the assignee, were attached at the suit of creditors of the assignors. The assignee in turn replevied them, and, on trial, the creditors justified the attachment on the ground that the assignment was fraudulent. Finding and judgment in favor of the creditors, from which the assignee prosecuted proceedings in error to this court. Evidence reviewed and held not to support the finding of the district court.

2. ———: ASSIGNEE. After the sale of goods fairly made by an assignee, he may, if he sees fit, re-purchase them for his own private use and benefit.

3. ———: PREFERENCE BY DEBTOR IN FAILING CIRCUMSTANCES. A debtor, even when in failing circumstances, has the right to pay the *bona fide* demand of one of his creditors to the exclusion of others.

| | |
|---|---|
| 12 | 19 |
| 15 | 535 |
| 22 | 504 |
| 12 | 19 |
| 30 | 131 |
| 12 | 19 |
| 40 | 827 |
| 12 | 19 |
| 43 | 229 |
| 12 | 19 |
| 45 | 140 |
| 12 | 19 |
| 50 | 419 |
| 50 | 489 |

ERROR to the district court for Lancaster county.   Tried below before POUND, J.   The opinion states the case.

*James E. Philpott* and *J. L. Caldwell,* for plaintiff in error.

Assignment cannot be vacated by the defendants by showing that there was fraud or misrepresentation on the part of the debtor in the creation of the debt.   *Horwitz v. Ellinger,* 31 Md., 492.   *Mattison v. Damerest,* 4 Robt., 161.   *Pearce v. Jackson,* 2 R. I., 35.   *Reinhardt v. Bk. of Ky.,* 6 B. Mon., 252.   *Kennedy v. Thorpe,* 51 N. Y., 174. S. C. 2nd Daily 258, 3 Abb. Pr. N. S. 131.   *Waverly Bank v. Halsey,* 57 Barb., 249.   Sale of goods and taking in payment therefor notes, if done in the ordinary course of business, is no badge of fraud.   *Loeschiz v. Baldwin,* 38 N. Y., 326.   Subsequent sales by assignee cannot revest property in debtor, or have a retroactive effect, so as to avoid the assignment.   *Klapp v. Shirk,* 13 Penn. State, 589.   *Shattuck v. Freeman,* 1 Met., 10.   *Wooster v. Stanfield,* 11 Iowa, 128.   *Baldwin v. Buckland,* 11 Mich., 389.   *Cyaler v. McCurtry,* 40 N. Y., 221.

*Harwood & Ames,* for defendant in error.

If it appears that the object of the assignment was to delay creditors and *effect a settlement,* it is void.   *Work v. Ellis,* 50 Barb. N. Y., 512.*   *Keteltas v. Wilson,* 36 Barb., N. Y., 298.   But the fraudulent intent of the assignors, accompanied by fraudulent disposition of their property, and the preference of a creditor on the eve of the assignment and in contemplation of it, render it void, although the assignee had been ignorant of both the fraud and preference.   Bump on Fraudulent Conveyances, 361.   2 Perry on Trusts, § 590, note 2.   *Moss v. Humphrey,* 4 Green. Ia., 443.   *Fuller v. Ives,* 6 McLean, 478.   *Waverly National Bank v. Halsey,* 57 Barb., 249.*   *Ruble v.*

*McDonald,* 18 Iowa, 493.* *Schultz v. Hoagland,* N. Y.
Com. Pleas, Feb. 1880, 9 Reporter, 355.* *Hubbard v.
McNaughton,* Michigan, April, 1880, 5 N. W., Rep., 251.*
*Flammigon v. Lampman,* 12 Mich., 58. Neither the as-
signee, nor the creditors of the assignors, are purchasers
for a valuable consideration, and it is not necessary that
knowledge of the fraud should be brought home. 2 Perry
on Trusts, § 590, note 2. *Hairgrove v. Willington,* 8
Kans., 480.* *Johnson v. Laughlin,* 7 Kans., 359. And
for that reason an assignee *cannot maintain an action to
set aside fraudulent conveyances made by the assignor.
Pillsbury v. Kenyon,* N. J. Chan., Oct. 1879, 9 Reporter,
517.

LAKE, J.

This action was brought to recover the possession of a
stock of goods by the plaintiff as assignee. The defend-
ants justified their detention as attaching creditors of the
plaintiff's assignors, and the finding and judgment were
in their favor. After a careful review of the case, and of
the points made by counsel for the defendants, we find no
ground upon which that judgment can be upheld.

Most of the questions now presented were before this
court and decided in the case of *Lininger v. Raymond,* 9
Neb., 40, and will be treated as settled. The only new
question deserving of any notice is whether upon the
testimony *dehors* the deed of assignment itself, that in-
strument is shown to have been fraudulent. As to the
assignee himself, there is not a syllable of evidence tend-
ing in the slightest degree to impeach his motives in
accepting the trust confided to him, or to show any lack
of the utmost good faith in all that he had done in its
execution. Indeed, the defendants seem to have so much
confidence in his integrity and truthfulness, as to make
him their sole witness in the presentation of oral testi-
mony as to his connection with the transaction, and his

statement stands uncontradicted, that he had no knowledge of the insolvency of the assignors, or that they contemplated making an assignment, until the evening before it was made, when he was requested to serve in the capacity of assignee.

In addition to the oral testimony of the assignee, the only evidence on which the defendants relied to establish fraud in the assignment, was an agreed statement of facts, to the admissibility of which both parties, by stipulation, were at liberty to object, and which the plaintiff did, to most thereof, on the ground of immateriality. To epitomize this statement of facts, in substance, it merely shows:

*First*, That some twenty days before the assignment, the assignors took " an inventory of the stock in trade, goods, wares and merchandise," which they then had on hand, which then amounted in value to about three thousand six hundred dollars. That, in addition to this stock, they had notes and accounts for goods sold to the nominal amount of three thousand three hundred dollars.

*Second*, That some eight days after taking this inventory, one of the assignors, for the purpose of obtaining credit, stated the facts of this inventory to the defendants, to whom the assignors were already indebted for a considerable amount, and thereby obtained a further credit of one hundred and one dollars and ninety-eight cents.

*Third*, That between the taking of the inventory and the date of the assignment, there was realized, by two of the assignors, by the sale and disposal of said goods for cash, and the notes of purchasers on thirty and sixty days time, and used for the use of their families, in all about eighteen hundred dollars; and during the same time they " received payment, partly in cash, but mostly in notes payable in thirty and sixty days from date, about twenty-four hundred dollars in amount of said

book accounts." Of these notes, "about ten hundred and fifty dollars in amount" were given to one Gillan. "in payment of a note for three hundred and fifty dollars and interest from May 1st, 1877, which he held against the assignors."

*Fourth,* " That a short time after said assignment the plaintiff, as assignee, sold all the goods, chattels and effects, * * * * after giving due notice thereof, and to the defendants, to the highest bidder, at public auction, for the sum of about nine hundred dollars, and immediately thereafter purchased the same of the purchaser at said sale, and has since continued in the possession of the same, and conducted and carried on a business similar to that formerly carried on by said co-partnership, in all respects as his own, and in the same building formerly used and occupied by said co-partnership in said business."

*Fifth,* That on the 6th of March, 1878, the plaintiff sent to the defendants and other creditors a statement of the effects and liabilities of his assignors,· together with an offer of twenty-two cents on the dollar of their indebtedness as a compromise, and to save the expense and sacrifice incident to a forced sale of the goods at auction.

*Sixth,* That the defendants commenced their action in attachment on the 31st of January, 1878, and attached the goods in controversy on the ground that the assignors had "fraudulently contracted the debt and incurred the obligation on which the suit was brought," and on the further grounds that they had " assigned, removed or disposed of, or were about to dispose of, their property, or a part thereof, with intent to defraud their creditors," and that "they had property or rights in action which they concealed."

To this attachment suit no defense appears to have been made, and at the May term of said court, 1878, the defendants recovered a judgment for eight hundred and

forty dollars and costs, and an order for the sale of attached property, which, however, had been reclaimed by the assignee by virtue of said replevin proceedings.

The foregoing is the substance of all the facts upon which the district court rendered its judgment in favor of the defendants, and we hold them to be totally inadequate to support it. There is not a single fact shown that is not entirely consistent with good faith on the part of both the assignors and the assignee in making the assignment. Considerable stress is put upon the fact of the assignee finally becoming possessed, in his individual right, of the goods, but there is nothing even suspicious in this circumstance, when viewed in the light of the statement agreed to concerning it, that the goods were first duly sold by the assignee to the highest bidder, after due notice, not only to the public generally, but also to the defendants, specially. There is not a word impeaching, in the slightest degree, the fairness of the assignee's sale, nor as to the price which he finally paid to obtain the goods from the purchaser. The sale by the assignee having been fairly made, which is in effect conceded, there was no rule of law preventing him from re-purchasing either a part or the whole of the goods for his own private use and benefit, if he desired to do so, and with as much freedom as might an entire stranger. We are of opinion that this fact of re-purchase of the goods by the assignee was entirely immaterial, for it certainly had no tendency to show that the assignment itself was fraudulently made.

Reliance is also placed upon the fact of the discrepancy between the value of the effects, as shown by the inventory of January 9th, and their value at the date of the assignment. The fact of a discrepancy, without any explanation, is of very little, if any, importance upon the question at issue. There is nothing to show upon what basis the respective valuations were made, or the quantity

of goods that had been disposed of, during the interval between them. Indeed, there is nothing in any of the conceded facts to show that a single article of the stock had been devoted by the assignors to an unlawful or fraudulent purpose. The payment of the Gillan note by notes taken by the assignors in settlement of accounts, for aught that appears, was entirely justifiable. A debtor, even when in failing circumstances, has the right to pay the *bona fide* demand of one of his creditors to the exclusion of others. This is a right of which the law has not undertaken to deprive him. As to the man Gillan, there is nothing showing him in any other relation to the assignors than that of creditor to debtors, and the seemingly great disproportion between the nominal value of the notes with which payment was made and that of the note paid, is of no significance without some evidence of the responsibility of the makers.

Being clearly of opinion that the finding of the court is entirely unsupported by the evidence, the judgment must be reversed and a new trial awarded.

REVERSED AND REMANDED.