JOHN JOHNSON AND WILLIAM T. JOHNSON, PLAINTIFFS IN ERROR, V. JAMES A. WALKER, DEFENDANT IN ERROR.

1. **The Evidence** considered, and *Held*, To sustain the verdict.

2. **Execution.** An officer receiving a writ of execution issued by a justice of the peace, or by a county judge, upon a judgment rendered in a non-term case, is not required by statute to endorse thereon the hour of the day when the same is received.

3. ————: ADVERTISEMENT OF SALE. The sale of property on execution, such as those above described, need only be advertised "at four of the most public places within the precinct where such property is seized."

4. ————: LEVY. A sheriff or constable levying an execution upon a field of growing or standing corn, need not take manual possession thereof, nor do any act in respect thereto which, were it not for the protection of the writ, would make him a trespasser.

5. **Instructions** given and refused considered, and *Held*, Rightly given and refused.

ERROR to the district court for Cass county. Tried below before CHAPMAN, J.

*Crites & Ramsey* and *J. B. Strode,* for plaintiffs in error, cited : Civil Code, Sec. 484. *Davidson v. Waldron,* 31 Ill., 121. *Chittenden v. Rogers,* 42 Id., 100. *Wood v. Augustine,* 61 Mo., 46. *Cresson v. Stout,* 17 Johns., 116. *Lininger v. Raymond,* 12 Neb., 19. *Minor v. Herriford,* 25 Ill., 344.

*Beeson & Sullivan,* for defendant in error, cited : Herman Chattel Mortgages, 68. *Mitchell v. Badgett,* 33 Ark., 387. Freeman Ex., Sec. 341. *Hunt v. Loucks,* 38 Cal., 372. *Buchanan v. Tracey,* 45 Mo., 437. 1 Bouvier, 34. *Farrington v. Sinclair,* 15 Johns., 428.

COBB, J.

This was an action in the district court of Cass county, brought by the plaintiff against the defendants, for the conversion of forty acres of standing corn grown upon the north-west quarter of the south-west quarter of section sixteen in township eleven north of range thirteen east, in said county, of the value of $200. The answer of the defendants was a general denial. There was a trial to a jury, with a finding and judgment for the plaintiff against both of the defendants, in the sum of $94.

The defendants bring the cause to this court on error, and assign the following errors:

First error formal.

2. The verdict is not sustained by sufficient evidence.

3. The verdict is contrary to law.

4. The court erred in admitting in evidence the record of the sheriff's return of the *pretended* levy upon and sale of the corn in controversy.

5. The court erred in admitting in evidence the return of the sheriff of the pretended levy upon and sale of the corn in controversy.

6. The court erred in refusing to give the first, fifth, and eighth instructions asked in behalf of defendants.

7. The court erred in giving the first, second, and third paragraphs of instructions asked by plaintiff.

8. The court erred in giving the fourth instruction on its own motion.

9. Errors of law occurring at the trial and excepted to.

10. The verdict is for the plaintiff, when, under the law and the evidence, it should have been for the defendants.

On the trial the plaintiff offered the page of the docket of the county judge containing the record of a judgment in favor of James A. Walker v. Wm. T. Johnson, having

47

first identified the said docket by the testimony of C. Russell, county judge. Also the page of said docket showing the returns of an execution issued on said judgment. The defendants objected to the admission of the same in evidence, as incompetent, immaterial, and not the best evidence, the return of the execution and the return of the sale not showing that the notices of the sale were published as required by law; and for the further reasons that the return of the sale does not show that the property levied on was in view at the place of sale, and does not show that the goods in question were sold to the highest bidder. Which objections were overruled and the evidence admitted.

The plaintiff then offered in evidence an execution issued by Judge Russell, county judge of Cass county, on the 12th day of September, 1885, after having identified it by the testimony of said county judge. The defendants objected to the introduction of the said paper in evidence, as incompetent, immaterial, and irrelevant. And for the further reason that the time of the receipt of the writ is not endorsed upon the same; and for the further reason that the advertisement of the sale of the said property was not made in pursuance of law, not having been published in some newspaper; and for the further reason that the return does not show that the property was sold, when it was, or who was present at the place of sale, and does not show that the property was sold to the highest bidder, which objection was overruled and the evidence admitted.

Without referring to the questions raised by defendants as to the admissibility of the record evidence as above set out, or the effect thereof, which will be hereafter considered, but taking up the points in the order presented, I will examine the evidence upon the admissibility of which no point is presented.

It appears that the defendant, John Johnson, was and still is the owner, by purchase from the state, of the land

upon which the corn, for the conversion of which suit was brought, was grown; that he placed his son, the defendant, Wm. T. Johnson, in possession of said land, upon the oral agreement between them that the proceeds of the cultivation thereof, after sufficient thereof being applied to the purpose of paying the cost and necessary expenses of such cultivation, and the improvement of said land, and the support and maintenance of said Wm. T. and his family, should be the property of said John Johnson. It further appears that there were certain annual payments of interest upon the purchase of said land necessary to be made to the state, for which the said John Johnson was bound, but which the said Wm. T. became and was obligated to pay, out of the proceeds of such land and the cultivation thereof; also that the said Wm. T. was largely indebted to said John for advancements made to him at sundry times and in various ways, at the date of the commencement of the occupation and cultivation of said land upon the terms above stated. It also appears that, at the date of the transactions involved in the case, John Johnson was bound as security for Wm. T. Johnson on notes in bank for large sums of money.

It appears in evidence that, on the 24th day of July, 1884, before the Hon. C. Russell, county judge of Cass county, the plaintiff, James A. Walker, by the consideration of said county judge, recovered a judgment against the said Wm. T. Johnson in an action then and there pending for the sum of one hundred eleven dollars and twenty cents, and one dollar and forty cents, costs of suit, total, one hundred twelve dollars and forty (sic) cents; that on the 12th day of September, 1885, the said county judge issued an execution on the said judgment, and placed it in the hands of J. C. Eikenbary, sheriff of said county; that on the 14th day of September, 1885, the said sheriff levied the said execution on forty acres of standing corn in the field, described as growing on the north-west quarter of

the south-west quarter of section 16, in township 11 north, of range 13 east of the 6th P. M., in Cass county. Also, that on the 26th day of September, 1885, at the hour of 2 o'clock P.M., of said day, the said sheriff sold the said corn, by virtue of said execution and levy, at public vendue, to said plaintiff. It also appears from the evidence that afterwards the said corn was gathered by the defendants, or under and by their authority, and converted to their use. The value of the corn was sufficiently proven to an amount, sufficient as to that point, to justify the verdict.

The question that arises under this head of our inquiry is, whether the defendant, John Johnson, was possessed of a property in, and title to, the corn, that would shield it from an execution against the property of Wm. T. Johnson. It was in the exclusive possession of the latter, and was the product of his sole labor. On the other hand, the inchoate title to the land that produced it was in the former, and there was an agreement, or understanding, between the two, that a possible remainder of the product of such land should be the property of the former. I am unable to make any application of the further claim on the part of the defendants, arising out of the consideration of the money advanced by the father to the son, or the contingent liabilities which he had assumed and was still bound for in his behalf.

It may be admitted as a principle of law that the owner of the soil will be presumed, *prima facie*, to be the owner of the growing crops standing upon it. But this must be taken in connection with another and controlling presumption, to-wit, that the person in possession is the owner of the soil, as well as of the growing crops thereon. · Considering these two presumptions together, and applying them to the case at bar, had no one been in the actual possession of the farm on which the corn was raised, at the time of the levy, then the owner of the soil, even by the inchoate

·title of time purchaser from the state, would be presumed to be the owner; but with the defendant, Wm. T. Johnson, in the exclusive possession of the farm, he is presumed, *prima facie,* to be the owner of both farm and crops, and this presumption, as to the crops, continues after that as to the ownership of the soil is overturned by evidence of title in another. And it is strengthened so as to no longer be a mere presumption, when it is proved that they were produced by the labor of the person in possession. Was the understanding or agreement between the defendants sufficient to vest the ownership of the future crops to be raised on the farm by Wm. T. Johnson, or the possible remainder of them over and above "a support for himself and family, and to pay hired labor to help him raise the crop," in the elder Johnson? If so, then it was a sale; and being a sale of personal property without an immediate and continued delivery of possession to the purchaser, it was void as to creditors. But this agreement was made before this corn was *in esse,* or the first step taken toward its production. In the case of *Cole v. Kerr,* 19 Neb., 553, this court held that, a mortgage of a crop of corn, yet to be planted, conveyed no title as against a levying creditor. I have seen no reason for changing the view there expressed.

Counsel for plaintiff in error, in the brief, say, that the contract between the Johnsons, which they assume was made on the 1st day of March, 1885, "was not in the nature of a security for the payment of the debts owing by Wm. T. Johnson to John Johnson, but was an actual payment of the debts, so far as the surplus of the corn over and above the living expenses of William was concerned, and so far as it went it transferred absolutely the title to, and right of possession of, all the surplus corn raised, to John Johnson," etc. I cannot agree to this proposition. Payment, as I understand it, is the actual delivery, passing, or surrender of something which actually satisfies a debt or obligation. No agreement or promise to pay or de-

liver, in whatever manner or at whatever time, is payment.
If it were, then would one of the hardest problems of life
be easily solved. But can it be seriously claimed that
Wm. T. Johnson owed his father any less, immediately
after the agreement referred to, than he did before?
Counsel add, "But if the contract was in the nature of se-
curity to John Johnson, given by William to secure *bona
fide* debts owing by the latter to the former, the latter had
a right to pay the same, to the exclusion of the claims of
all other creditors." To this they cite the case of *Linin-
ger v. Raymond*, 12 Neb., 19. There is a wide difference
between that case and the case at bar. There, before the
passage of the present assignment law, Crabtree, Travis &
Co., merchants in failing circumstances, made an assign-
ment to J. B. Lininger for the benefit of their creditors,
and delivered their stock in trade, books, notes, etc., to
him ; Raymond & Co., creditors of C., T. & Co., took out
an attachment, and seized the goods in the hands of the
assignee, on the ground that the assignment had been
made by C., T. & Co. with intent to defraud their cred-
itors. Lininger brought replevin for the goods. The de-
fendants had judgment in the court below. In this court
a point was made by defendant in error, that the assign-
ment was fraudulent, for the reason that, shortly before the
assignment, the assignors paid off a note of theirs to one
Gillam with bills receivable of theirs, at a large discount
thereon. In reply to this point, the court, in the opinion,
say : "A debtor, even when in failing circumstances, has
the right to pay the *bona fide* demand of one of his cred-
itors to the exclusion of others. This is a right of
which the law has not undertaken to deprive him. As
to the man Gillam, there is nothing showing him in any
other relation to the assignors than that of creditor to
debtors, and the seemingly great disproportion between the
nominal value of the notes with which payment was made
and that of the note paid, is of no significance without

some evidence of the responsibility of the makers." It will be observed that this payment to Gillam was made by the actual assignment and delivery of bills receivable to him, before the assignment, and of course before the attachment of Raymond. In the case at bar, it will not be doubted that Wm. T. Johnson could have paid and delivered the corn to his father on the debts which he owed him at any time after said corn came into being and before the levy of the execution of the defendants in error. But, as we have seen, a promise to pay or deliver does not amount to payment. So far, then, as objection to the verdict is presented by the first, second, and third assignments, they must be overruled.

To the fourth and fifth assignments of error, counsel cite section 484 of the code of civil procedure. This section of statute is applicable only to executions issued out of a court of record, upon which lands may be levied upon and sold. The execution in the case at bar was issued upon a judgment rendered in a non-term case in the county court, and falls within the provisions of sections 1067 et seq. of the code. These provisions do not require the officer receiving an execution to endorse thereon the hour of its receipt; nor do they require the notice of sale to be "published in some newspaper;" nor that the return should show that the property was sold to the highest bidder. Moreover, if all of these things were required of the officer making the levy and sale, the question of their observance in a case like this could only be raised by a direct proceeding. Such want of observance by the officer would not affect the title of a purchaser in good faith.

The Illinois cases cited, with the exception of *Davidson v. Waldron*, 31 Ill., 121, are where personal property, which by its nature was susceptible, in its then condition, of asportation, was either levied on or sold by the officer without taking or having it under his control. In such cases the rule, as laid down by Judge Breese in the case

of *Miner v. Herriford*, 25 Ill., 344, cited by counsel for plaintiffs in error, that, "to constitute a proper levy on personal property," in that case a wagon, "it must be at the time within the control of the officer; and he must so deal with it that he would, without the protection of the writ, be a trespasser," is applicable.  It is true that the authority of this case in the same court was held to apply to that of *Davidson v. Waldron*, 31 Id., 121, also cited by counsel, where the property in question consisted of a large stock of lumber.  But an examination of that case will not fail to show that its decision was controlled by other facts and circumstances not applicable to the case at bar.

The rules of law governing the levy and sale, upon execution, of crops of growing corn, or other grain, or tame grass, are peculiar, and not applicable to other species of personal property, and do not require any act on the part of the officer, so far as the levy is concerned, which, were it not for the protection of the writ, would make him a trespasser.    Such an act in the case at bar was unnecessary and impracticable, and would have answered no purpose.  It may be admitted to have been his duty to notify all persons present at the time of the levy.    This he did by notifying the wife of William T. Johnson, the only person present.    The law requires that personal property should be in sight at the time of sale; also that the sale be made "at the house or on the premises where such property was taken, or at one of the most public places within the precinct."    Sec. 1067, Code.    These conditions appear from the evidence to have been sufficiently complied with.

The following portion of instruction No. 4, of instructions given by the court on its own motion, forms the foundation of the 8th assignment of error, as insisted upon in the brief: "A verbal lien or agreement between the defendants, by which John Johnson was to have the corn in controversy, under certain conditions, would not constitute title or ownership therein sufficient to entitle him

to convert the same to his own use, and thus defeat the lien of an execution creditor levied without notice of such verbal lien." Counsel insist that this instruction is not applicable to the evidence in the case, because, as they say, the evidence shows "that the surplus corn, under the contract, was to be John Johnson's absolutely. The instruction assumed that the agreement was subject to conditions, and therefore misleading to the jury." But, as I understand the evidence, the right of the elder Johnson to any part of the corn, even as between him and his co-defendant, depended upon the condition or contingency that there would be any left, after paying the living expenses of Wm. T. Johnson and his family and the cost of hired hands to carry on the farm, a most uncertain and doubtful event, according to the average experience of farmers in this, as well as all other countries. I see no objection to the instruction.

The refusal by the court to give instructions No. 1, 5, and 8, asked for by defendants, is complained of by them in their sixth assignment. I copy the instructions offered: "No. 1. You are instructed that a debtor, even in failing circumstances, has the right to pay or secure the *bona fide* demand of one of his creditors, to the exclusion of others. 5. To establish collusion between defendants, for the purpose of defrauding the creditors of Wm. T. Johnson, it must appear by a clear preponderance of the evidence that both defendants had knowledge of the liability and indebtedness of William Johnson, and that both defendants entered into the agreement regarding the cultivation of the land, with full knowledge of such indebtedness, and with intent to defraud the creditors of William T. Johnson. 8. The court instructs the jury that, as a matter of law, personal property, when sold under execution, must be in the custody of the officer making the sale, and must be in view of the officer and bidders at the time of sale thereof, and must be sold to the highest bidder for cash."

The instruction No. 1 was rightly refused, although it correctly states an abstract principle of law, for the reason that it was not applicable to the facts in evidence before the jury.    Had it been in evidence that, while the corn in question was *in esse*, and before the levy of the plaintiff's execution thereon, Wm. T. Johnson sold and delivered the same to John Johnson, in payment of a *bona fide* debt, the instruction would have been applicable, but as we have already seen, there was no evidence of a sale or payment by the former to the latter.    As to the fifth instruction prayed, it is sufficient to say, that no question of fraud arises in the case, but simply the questions of title in plaintiff, and the conversion of the property by the defendants.

While the 8th instruction asked expresses the law as applicable to sales of personal property generally, yet if applied to a field of standing corn, that part of the instruction which requires the property to be in the custody of the officer would be liable to mislead the jury, as actual possession or custody on the part of the officer would be both unnecessary and impossible, as long as the farm, of which the field of corn constituted a part, was in the actual possession of the defendant, Wm. T. Johnson.    Hence, as the instruction could not be given as a whole, in the form in which it was presented, it was rightfully refused.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.